Commonwealth *v.* Joseph et al., Appellants.

618

Argued November 16, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*John D. Ray,* with him *Reed, Ewing & Ray,* for appellants.

*Richard P. Steward,* District Attorney, for appellee.

OPINION BY HIRT, J., December 28, 1956:

The defendants George and Paul Joseph were both convicted on charges of conducting a lottery, and were

sentenced. Paul Joseph was also sentenced, concurrently, on his conviction of establishing a gambling place. In these appeals they contend that there is error in the refusal of new trials by the lower court.

Paul Joseph is the proprietor of a confectionery store on Franklin Avenue, the main street in the business section of Aliquippa, near the entrance to the works of the Jones and Laughlin Steel Corporation. His brother George Joseph works part time in the store. Between turns at the steel mill workmen congregate in the store to make purchases, to view television and for other purposes.

At the trial of these defendants, Sigmund H. Pruszenski was the principal Commonwealth witness. He testified that on June 17, 1955 he paid George Joseph $2.00 to play two numbers (672 and 652) for that day and at the time he also had "a play going for three days at a quarter a day". He said that he had played numbers with both brothers in the store on occasion ever since the spring of 1954. Number 672 "hit" on that day. Pruszenski said that accordingly he was entitled to receive $675 under the terms of the lottery, and that there were arguments for several days between him and both of the defendants because of their failure to pay. Thereafter George Joseph on the defendants' agreement to satisfy the claim in instalments, paid him $50 and, several days later, $200. According to Pruszenski that is all he has received from the defendants or either of them. The fact that Pruszenski was a reluctant witness (in spite of the fact that he has not been paid in full) does not make his testimony less impressive. His sworn testimony alone is sufficient to support the convictions as to both of these defendants on which they were sentenced, beyond all reasonable doubt. There was some additional incriminat-

ing evidence however including the testimony of the county detective (who was the prosecutor in these cases) that he had observed Paul Joseph in the act of paying off operators of pinball machines with "some change".

The basis of these appeals has to do with the testimony of two witnesses, Alex Kowalick and Pearl Hazzard. When called by the Commonwealth Kowalick admitted playing numbers with "Bulla" (the name by which the J. & L. workmen knew Paul Joseph) and "writing numbers", "a couple of years" previously (beyond the period of the Statute of Limitations) but not since. At this point the district attorney pleaded surprise and asked leave to cross-examine the witness because the testimony was at variance with incriminating statements made by him as a witness before the committing magistrate at the preliminary hearing. When the court indicated that the plea would be sustained and cross-examination of this, the Commonwealth's own witness, would be allowed, the defendants' counsel said: "We have no objection to the cross examination of this witness, but we wish to have the Court rule . . . if the District Attorney pleads surprise and asks leave to cross examine, it is then only for the purpose of discrediting a witness who has given an answer which is damaging to him, and such cross examination is not a part of his case in chief." In response to this request the court ruled: "Now, as to this particular witness from here on, the cross examination of this witness does not create an affirmative fact of evidence . . ." The cross-examination followed and the court in charging the jury referred to his prior testimony, and in effect instructed the jury that what he said as a witness at the preliminary hearing could not be accepted as evidence of the guilt of the defend-

ants but that at most it only neutralized the contradictory testimony favoring the defendants which prompted the plea of surprise. Pearl Hazzard was similarly called as a witness for the Commonwealth. She had formerly been employed in the "Blue Bell", a restaurant "next door" to Paul Joseph's store in Aliquippa. When so called she, admitting she had played the lottery in the past, testified that she had not "played numbers with Paul Joseph" in 1955. Thereupon the district attorney pleaded surprise and was allowed to cross-examine her on an oral statement she had previously given to two county detectives to the effect that she had played numbers with both of the defendants many times in 1955 and up to June 11, 1955, the day of her last employment at the Blue Bell. This cross-examination was permitted but only for the purpose of impeaching the witness and defendants' counsel stated: "I have no objection" to it.

It is averred on behalf of appellants that when the district attorney said he was surprised, counsel for appellants then believed him in both instances. And it is now stated that after the case was tried (and after verdict we assume) counsel first learned that these witnesses, Kowalick and Hazzard, had repudiated their original incriminating statements; and that before trial, the district attorney had been notified that they would change their testimony accordingly. The assertion of counsel's lack of notice to this effect is now urged as ground for a new trial, for the reason advanced, that since the district attorney knew of the change of front by these witnesses, the Commonwealth was not "surprised" (Cf. *Selden, Admr. v. Metropolitan Life Ins. Co.*, 157 Pa. Superior Ct. 500, 43 A. 2d 571) and in such circumstances there would have been an objection to the Commonwealth's cross-examination of its

own witnesses if defense counsel had known the facts.

In negation of the above claim of after discovered evidence it clearly appears that at the time of trial counsel had in his possession an affidavit of Kowalick given after the preliminary hearing, in which he repudiated his testimony before the magistrate under oath. This affidavit was offered in evidence as defendants' Exhibit A. And as to Pearl Hazzard the record of the cross-examination of the witness Pruszenski clearly suggests that defense counsel were in closer contact with her and were more familiar with her knowledge of the case than was the Commonwealth. In general when counsel in the presence of the defendant during the trial of a criminal case explicitly waives objection to the cross-examination by the district attorney of a witness called by the Commonwealth the defendant is bound by the waiver.

But even if the statement of counsel be accepted at face value we have grave doubt that the defendant would be entitled to a new trial solely on that type of after-discovered evidence. "The rules governing the granting of new trials because of after-discovered evidence are well settled in this State. To entitle a defendant to a new trial on this ground the evidence must have been discovered since the trial, and be such as could not have been obtained at the trial by the use of reasonable diligence; it must not be simply corroborative or cumulative, or merely to impeach the credibility of a witness; and it must be such as would likely result in a different verdict if a new trial were granted": *Commonwealth v. Mellon,* 81 Pa. Superior Ct. 20. Of controlling importance, as stated by us in *Com. v. Greenfield,* 103 Pa. Superior Ct. 489, 495, 157 A. 50: "The inquiry is whether, taking the newly-discovered evidence in connection with that produced at the trial,

the legitimate effect of placing such combined evidence before another jury would be to require a different verdict."

In any view however we are satisfied that there was no abuse of discretion in permitting the cross-examination by the Commonwealth of its witnesses Kowalick and Hazzard. Two different situations were presented in which the court honored the Commonwealth's plea of surprise and allowed the district attorney to cross-examine his own witnesses. The witness Kowalick, sworn as a witness on the trial of these defendants, repudiated incriminating statements made by him, also under oath, as a witness before the committing magistrate. The prior incriminating oral statement made by Pearl Hazzard to the county detectives was not under oath. As to Pearl Hazzard the assertion of surprise was proper, for the district attorney, regardless of contradictory statements, was justified in believing that she would respect the sanctity of her oath when called as a witness in the trial of the defendants and that her testimony would accord with the recitals of her spontaneous statement freely given to the detectives immediately after the arrest of these defendants. The Commonwealth was surprised that it did not. The same may be said of the witness Kowalick and there was rational basis for the ruling as to him. It was not to be assumed that he would take the chance of subjecting himself to prosecution for perjury in contradicting under oath the testimony previously given by him as a sworn witness.

The label on the procedure adopted by a court in doing justice is unimportant; in this case the cross-examination of these witnesses was proper under another well settled principle of law. The district attorney was not obliged to call Kowalick or Hazzard. But

since they were called the rule with respect to hostile and adverse witnesses applied even without an assertion of surprise. In *Commonwealth v. Deitrick,* 221 Pa. 7, 15, 70 A. 275, the witness Woll was an eyewitness to the commission of the crime. The charges in the indictment of the present defendants are in general language, without reference to any one of the number plays made by Pruszenski, Kowalick or Hazzard. The witnesses Kowalick and Hazzard therefore are within the same category here as was Woll in the *Deitrick* case. In that case Mr. Justice STEWART said: "However much it was insisted upon formerly that a party could not be allowed to impeach by contradiction witnesses called by himself, the rule which prevented it has not only been much relaxed, but, as Mr. Wigmore in his treatise on evidence shows, has been in most jurisdictions wholly abrogated. In England, where it had its origin, some features of it, preserved by statute, yet remain, but the very marked tendency in this country is to escape from it entirely. Our own state furnishes no exception. In Gantt v. Cox & Sons Co., 199 Pa. 208, speaking by the present chief justice, we said: 'The rule that a party calling a witness is not permitted to ask leading questions and is bound by his testimony, is liberally construed in modern practice, with a large measure of discretion in the court to permit parties to elicit any material truth without regard to the technical consideration of who called the witness. It is a discretion not susceptible of exactly defined limits before hand, but to be exercised in the interests of justice and a fair trial under circumstances as they arise.'"

We find no error which will justify new trials of these cases.

Judgments of sentence affirmed and it is ordered that the defendants appear before the court below at

such time as they may be there called, and that they be by that court committed until they have complied with their sentences or any part thereof which had not been performed at the time the appeals were made a supersedeas.