## Com. of Pa. *v.* Stewart, Appellant.

Argued May 8, 1933.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Maurice P. Breene,* for appellant.

*Daniel J. Skelly,* District Attorney and with him *Gervaise G. Martin,* for appellee.

OPINION BY JAMES, J., October 2, 1933:

This is an appeal from a sentence of conviction of the appellant on an indictment containing two counts, charging statutory rape and fornication and bastardy.

At the time of the alleged occurrence, the appellant was a married man twenty-seven years of age, not living with his wife, and the girl was fifteen years of age. (She was sixteen years of age on February 20, 1932.)

The testimony shows that appellant met the prosecuting witness, one Elizabeth Hughes, for the first time at a party near her home on the evening of October 21, 1931. When she and Bertha Heckathorn were ready to go home at about 11:45 P. M., the appellant offered to take them to their respective homes in his automobile. The invitation was accepted and appellant and the Hughes girl first took Bertha Heckathorn to her home and returned to the lane leading to the Hughes girl's residence and there in the front seat of the automobile the appellant had carnal knowledge of her, as a result of which a child was born to her on July 4, 1932. A week after the alleged occurrence, the appellant came to the home of the prosecuting witness and asked to marry her. Some time in February, 1932, after her parents learned of her condition, the appellant came to the Hughes home and discussed her condition with her and her parents, during which conversation they discovered appellant was a married man. He spoke about going away to some far place to secure a divorce. From that time down to the date of the birth of the child, appellant did not visit the prosecuting witness at her home but wrote several letters to her. At the time of the birth of the child, appellant was at the home of the prosecuting witness.

He came into her room after the baby was born and said, "I am sorry to have you go through so much pain for me." When he first came into the room, the nurse was dressing the baby and when the baby was brought back he said the child had red hair and high cheek bones like its daddy. A few days later appellant returned to the Hughes home and there picked up the baby and said, "How's daddy's baby today?"

Appellant admitted much of the Commonwealth's testimony but denied the illicit relation.

The discussion of the first ten assignments of error relates to the charge of the court and was divided into three phases: (1) The charge was inadequate, (2) the charge was confusing to the jury, and (3) the charge amounted to binding instructions. In this order, we shall discuss these assignments of error.

The chief complaint as to the inadequacy of the charge is that the court in reading the Act of May 19, 1887, P. L. 128, Sec. 1, read only the following portion of the act, to wit: "If any person who being of the age of sixteen years and upwards shall unlawfully and carnally know and abuse any woman child under the age of sixteen years with or without consent, such person shall be adjudged guilty of felonious rape," and did not read the proviso of the Act of 1887, which provides, "That upon the trial of any defendant charged with the unlawful carnal knowledge and abuse of a woman child under the age of sixteen years, if the jury shall find that such woman child was not of good repute, and that the carnal knowledge was with her consent, the defendant shall be acquitted of the felonious rape, and convicted of fornication only."

It has been held that the good repute of the child will be presumed and the burden of establishing ill repute rests on the defendant: Com. v. Allen, 135 Pa. 483, 19 A. 957; Com. v. Howe, 35 Pa. Superior Ct. 554.

The defense was not the bad repute of the girl but

an absolute denial of defendant's guilt and the only testimony bearing on the reputation of the girl was the cross-examination of the prosecuting witness as to whether she had not had intercourse with two other young men and the testimony of the defendant that the prosecuting witness had admitted to him that she had had intercourse on several prior occasions. This testimony was admitted by the court not to establish the bad repute of the girl, but relevant only as to the paternity of the child. It has been held that testimony under this proviso does not permit the proof of specific acts tending to show the bad character of the prosecutrix but the evidence must be confined to the general reputation: Com. v. Kester, 58 Pa. Superior Ct. 509. Under the testimony produced in the instant case, there was no occasion for the court to read the proviso as there was no evidence bearing. upon her reputation. Had defendant attempted to establish, in a proper manner, the bad repute of the girl as part of his defense, then it would have become the duty of the court to read the proviso of the Act of 1887.

Appellant frankly states that he can find no authority to justify his position, and we can find no logic or reason upon which his position can be sustained. He is claiming the benefit of a proviso, without any testimony to sustain him.

Complaint is made as to the second count in the indictment in the failure of the court to elaborate as to the nature and character of the offense of fornication and bastardy. It is difficult for us to determine what further explanation would be necessary as to this offense other than is set forth in the charge of the court. It is therein stated, "Fornication is the unlawful carnal knowledge of a man with a woman. If a child is born of that unlawful carnal knowledge, it is bastardy." That is a correct statement of the offense of

fornication and bastardy. At the conclusion of the charge, the court instructed the jury to return on each of the counts either guilty or not guilty, as they determined from the facts.

The second and third phases of the exceptions to the charge of the court allege that the charge was confusing to the jury and amounted to binding instructions. In order for us to answer in detail the contentions of the appellant, it would necessitate our incorporating almost the entire charge of the court below which we do not believe to be necessary.

The excerpts to which complaint has been made have been taken from the body of the charge without reference to the previous portions or the portions which followed it and are not a fair recital of the court's charge on the various phases of the case. We have examined each exception referred to as (a), (b), (c), (d) and (e) relating to the charge of confusion and find no merit in them. The charge of the court warned the jury as to the seriousness of the offense and elaborated at length upon the several elements which were required to sustain a conviction.

Appellant urges that the charge of the court amounted to binding instructions. We find no ground for this complaint as at no place in the charge did the court even go so far as to express an opinion as to the guilt or innocence of the defendant. In its charge, which takes up seven pages of the record, the court went into detail as to the nature of the offense and the proof necessary to sustain the conviction. He went into detail as to the presumption of innocence and the doctrine of reasonable doubt and in considerable detail as to the testimony. Nearing the conclusion of the charge he stated, ''You are not to take the version given by counsel for defendant or for the Commonwealth or the version given by the court. You will remember the testimony and you will apply your own

recollection of the testimony in determining the facts. The offense in this case is a felony and you will have nothing to say as to costs. You will return a verdict of guilty, if you find the defendant guilty beyond a reasonable doubt of such counts of the indictment as you so find. As has been mentioned, this indictment contains two counts—the first, statutory rape, and the second, fornication and bastardy. You will make a return on each of these counts,—either guilty or not guilty as you determine the facts.'' The court submitted the entire case to the jury with full freedom to act under their oaths as jurors, to find a verdict in accordance with their views of the testimony.

We have carefully examined the charge of the court in the light of the criticisms made by appellant and we believe that, as a whole, it fails to show either reversible error or undue prejudice to the defendant. The court fairly presented the conflicting questions involved, and we are of the opinion that the defendant was properly convicted.

The last assignment of error relates to the refusal of the court to grant a new trial upon the ground of after-discovered evidence. Defendant's motion for a new trial was based on the ground of after-discovered evidence that the prosecuting witness, Elizabeth Hughes, did not, at or about the time of the commission of the alleged offense, enjoy a good reputation for chastity; that he expected to be able to prove by four witnesses that the said Elizabeth Hughes was not a person of good repute and to prove by two of the witnesses admissions that she had, on previous occasions prior to the date of the indictment, had illicit relations with a number of different male persons; that knowledge of the existence of such facts was not possessed by defendant at the time of his trial, and that diligent search and inquiry prior to said trial had failed to bring these facts to light and make available

the witnesses who are now ready and willing to testify in his behalf, and that such information and knowledge did not come to him until on or about the 5th day of January, 1933.

In the cross-examination of the prosecuting witness, she was asked whether or not she had been intimate with two young men, which she denied. The defendant testified that she had admitted to him prior illicit relations with other young men. To say now that he had located witnesses who would establish facts of which he had direct knowledge, would not be after-discovered evidence. Defendant had knowledge for nearly a year of facts which should have put him upon inquiry. If he had made a thorough and proper investigation, he undoubtedly would have been able to produce the testimony which he now attempts to introduce as after-discovered evidence. Having taken his chances, he can not now, in good faith, allege that the evidence was after-discovered.

In the opinion of the court below, he states that the after discovered evidence was incompetent because the defendant had denied the commission of the offense. With this we do not agree. Such testimony in a statutory rape charge is competent whether defendant denies or admits the illicit relations. In addition, however, the court felt that the after-discovered evidence was largely cumulative of what defendant had knowledge of at the time of the trial.

In view of the fact that we believe the "after-discovered evidence" was discoverable before the trial, the court properly refused the new trial. Whether or not a new trial shall be granted to let in after-discovered evidence is a matter for the trial court, and the refusal of a new trial in such case will never be reversed in the absence of proof of a clear abuse of discretion: Hunter v. Bremer, 256 Pa. 257, 258, 100 A. 809; Essreg v. Bronstein, 76 Pa. Superior Ct. 550;

Simmons-Boardman Publishing Co. v. American Boron Products Co., 282 Pa. 521, 128 A. 511. We find no abuse of discretion in this case.

The judgment is affirmed. It is ordered that the defendant appellant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part thereof which he had not performed at the time this appeal was made a supersedeas.